on behalf of Appellant Superintendent Lambert. I would like to reserve five minutes. If you could speak right into the mic. All right. The acoustics in this room are – it's a beautiful room, but the marble makes the acoustics difficult. So if you could just speak right into the mic, it would be very helpful. I would like to reserve five minutes for rebuttal, if I might. Whatever you've got left on the clock is yours. All right. Sounds wonderful. I'll try to remind you. And thank you for the opportunity to appear. And this is quite a beautiful courtroom. In this case, the State has appealed the grant of habeas corpus relief by the district court on one of several grounds that the panel found to be well taken. I suspect this Court may have taken a macro view of it because of its interest in the statute of limitations issue. However, I think there are three independent grounds which show in this case that the grant of relief was not warranted, and I'm prepared to talk about any of them. But there are a couple of things that I think are undisputed, that the Federal habeas corpus petition is time barred unless this Court were to recognize an actual innocence exception to the statute of limitations. It is undisputed, I think, also that the actual innocence showing is based exclusively on impeachment evidence, and it's the type of impeachment evidence that was not new. As a matter of fact, much, not all of it, but much of it was presented to the original trial jury in 1995. Kennedy. Ms. Klapstein, I'm puzzled by your first comment. You say that it's time barred. As you know, the Supreme Court in Holland found that equitable tolling was not barred or was not barred despite HEDPA. Do you agree with that? That's correct. They found it in a classic equitable tolling case, in which case the problem was attributable to circumstances beyond that Petitioner's control. It was misconduct by trial counsel, and the Petitioner also exercised in due diligence to bring his Federal claims repeatedly and advised his attorney of the applicable timelines incorrectly. But in this particular case, though, when Congress passed HEDPA, which passed in 2006, Young v. The United States was in – oh, actually, that wasn't there. But excuse me, the shlup was in – had been decided. And Congress, pursuant to Young v. The United States, is presumed to understand the Court's rules and rulings and that the actual innocence exemption existed, is it not? That's correct. And I think one has to understand the actual innocence exception is an excuse to waive the procedural defaults that occur in State court typically. So your – I gather your problem is primarily that you think that before a shlup can be invoked that you've got to also be eligible for equitable tolling and show diligence and the like. Is that your position? I think there are about three or four different ways courts have approached whether innocence applies at all to waive the statute of limitations bar. The panel here chose to find that Congress, well aware of shlup, had enacted certain types of tolling for actual innocence in successive petition cases, and they also created a – it's not an exception, it's a later limitations period, for instances of discovery of new evidence. And in that light, unlike situations where Congress didn't speak at all about whether actual innocence creates an ability to waive a statute of limitations in the instance of actual innocence showing. So that's the approach the panel took. Other courts have taken different approaches. Often, like this Court in the case, simply there's an insufficient showing of innocence at any rate and did not reach the issue. But I don't agree that the issue of whether you have to establish an equitable tolling predicate before you can invoke shlup under AEDPA has not yet been decided by our Court. That's right. That's right. So is the State of Oregon prepared to say that you're going to allow an actually innocent person to remain in jail, even though the N cannot assert an untimely petition? I think what's the position? There – let me answer that a number of ways. We don't believe this defendant is actually innocent, first of all, this Petitioner. But setting that aside in the abstract sense, I think there is ample recourse for a person who is, in fact, actually innocent to achieve relief in State courts, achieve relief through gubernatorial pardon or clemency, even achieve relief through Federal court upon a timely application or in the showing of newly discovered evidence. In effect, that was Howes v. Bell, which recognized shlup continues, notwithstanding the creation of AEDPA, that shlup continues to exist, but Howes v. Bell was a classic instance that the shlup standards for actual innocence were amply satisfied by DNA evidence, an extrajudicial – it's very much like the Kerrigan case. Pardon me? Your answer is yes. I'm not sure. In this context. In this context? Yes. Well, I think that when your question is posed, is the State willing to allow an innocent person to remain in jail, my answer is no, in the sense that there are alternate forms of relief. I think it is absolutely a legitimate concern, and the Innocent Project points this out. But your answer would be yes if it were phrased in terms of Federal relief. It is – it is Borgen's position that we cannot address, even if we convince somebody is innocently in prison, we would have an authority to refer to. I think the panel decision was correct in that Congress stepped into the area of actual innocence. It's not so much the State of Oregon's position as the congressional position that has borrowed relief. But the actual innocence provisions in the statute and also the newly-discovered evidence part of 2244d.1 deal with newly-discovered evidence of the claim, right? I think that's correct. Not newly-discovered evidence of innocence. I think that's correct. I think that's correct. Isn't that different? In other words, you could have a situation in which there is no newly-discovered evidence about the claim. The claim remains the claim. It's still a constitutional claim, which perhaps you didn't raise before in Federal court, but what you have newly discovered is evidence of actual innocence. I think what you have to understand is the context for these procedures. What we're talking about in the Schlupp actual innocence before or after AEDPA is that we're not talking about an error-free trial. The only true freestanding innocence that's implicitly recognized by the U.S. Supreme Court is the death penalty context. But there are many, many quite competent attorneys that well represent their clients, that their clients maintain their innocence, and the trial itself in State court has not been constitutionally flawed at all. Kagan. I don't understand what that has to do with my question. Perhaps I didn't understand. I mean, my question is you are pointing to provisions in the statute as addressing this problem, but in fact they don't address this problem. They, in fact, address a different problem. I think there is a distinction between statutory tolling and equitable tolling. And I don't know if that answers your question, but I think the distinction is there in Holland v. Florida recognized equitable tolling as standing apart from statutory tolling. In this particular case, this is a case where the claim itself was based on the contention that the attorney should have called an expert witness. So it's a contention that falls within the ambit of the statutory exception, a claim that newly discovered evidence proves that I'm actually innocent in the factual sense of the word. To follow on with a couple of the questions both from Judge Berzon and Judge Smith, there's nothing in AEDPA that uses the term equitable tolling.  That's correct. That's correct. And that's true. So then the question only becomes, okay, what do we put into this judge-made tolling, equitable tolling? And part of the equitable tolling is the traditional equitable tolling. For example, the factors recited in Judge Moore's opinion in Souter. But that doesn't necessarily exhaust it. So, I mean, once we're into equitable tolling and it's judge-made law, why is it not equitable to allow someone who has made a claim of innocence with a sufficient evidence-showing to satisfy schluck, which is very hard to do, why is it equitable to say, sorry, you're too late, you may very well be innocent, but you're stuck? Why is that equitable? I have two answers to that question. One is the nature of an actual innocence showing like this. The whole structure of AEDPA and Federal relief is structured so that it channels true efforts to prove innocence into the State system at the outset. And the problem from an equity standpoint is really the due diligence component that exists both in schluck before There's no diligence requirement in schluck. It's a question of new evidence. It does not say newly discovered evidence. Newly presented evidence. You're correct. That's right. It's new evidence within the meaning of schluck if it was available at the time of trial but never presented. Yes. But I think it has to be new evidence of a particularly strong nature, and I think we all agree in that. Right. And so I'm asking you, given how high the threshold is for schluck itself, that is to say how likely it is if schluck is satisfied that the person is in fact actually innocent, why should we read the statute, which already you concede allows for equitable tolling? Why should we read the statute as to foreclose someone who has shown a very high probability of actual innocence? Equitable tolling, of course, traditionally looks to is there an external impediment to filing in State court on time, and actual innocence doesn't mesh well with that concept. Equitable tolling in the traditional Holland v. Florida sense also does require once you show this external impediment that you have showed, you have in good faith made good faith efforts, diligent efforts to file on time and seek Federal relief in time. And that's the State concern with the equitable tolling application, and I think this Court saw some of it in the Ferguson decision, where Oregon never used to have a statute of limitations for post-conviction relief, and people could file ages later. And if there is no diligence component to, if you adopt an equitable tolling in the innocence concept, one would think that there has to be some diligence construct, otherwise you undermine the entire purpose of trying to get these cases resolved in a timely fashion. I think it's absolutely.  What's your question? Schlup, as I understand it, would apply directly to a statute of limitations barrier in State court, right? Yes. So basically what you're arguing for is that for some reason, there should be an actual innocence exception if the limitations bar is in State court, but not in Federal court. Well, Schlup is designed to waive procedural defaults that occur in State court. Well, that's true, but it would have to attribute to Congress that it intended to be essentially more protective with regard to State court limitations lapses than Federal court limitations lapses. I don't know that it's a matter of being more protective of, and the Schlup doctrine stands alone, as we see at House v. Spell. But the policy concern that's exemplified by even an adoption of statute of limitations at all, I mean, that's why this is an unresolved question, because Schlup preexisted these statutes. And the problem is, from an equity standpoint, which is the purpose of either application for equitable tolling in whatever construct you have, or the lack thereof, is the policy concerns for abuse of the writ, the policy concerns for latches, the policy concerns for taking a case that, where crime lewis occurred in 1994, that petition doesn't file, you know, for five years after the State judgment is final. Now, I think that's to his detriment, right? I'm sorry to interrupt. It's to his detriment. I mean, he's the one that's being hurt by it, not really anybody else. Well, and I think, as I said earlier, I think the court, any court, should be absolutely concerned about the prospect that there's somebody that's innocent that is sitting in jail from where I don't quarrel with that. But the purpose of statute of limitations actually achieves a positive goal in that regard. Innocent people can't get away with it. Sotomayor, let me ask you, I always have trouble with these cases if I can't think of them in terms of real-life cases. So if you were to have an actual innocence gateway that also had appended to it something in terms of diligence, and 15 years have gone by, and now we have somebody else, through DNA evidence, that's been put up for trial and convicted. Only one person committed the crime in question. Defendant's in jail for it. Person number two is now in jail, too, because they've been convicted based on DNA evidence. The defendant has a very strong, perhaps a slam-dunk actual innocence claim. Absolutely. How can that individual come to Federal court and bring his other habeas claims? There's two things I would say about that. One is you may never see that case, but I expect you will. Well, that would be the rare case. Well, if I could be there. No. What I was going to say is you probably have state clemency. You never see it in that regard. Setting that aside as a case. You know, I wouldn't stake my claim if I were in jail based on clemency records. I wouldn't hope that that was my last hope. Well, I'm not saying it would be your last hope. The second thing I was going to say is that may well fall within statutory tolling. Statutory tolling allows for that newly discovered evidence which gives rise to a claim that Federal courts should and will. On a first petition? But the claim – but this evidence – and let's say there's other evidence. Let's say it's not evidence of another person, but there's some other evidence, but you can't really tie it to the claim, so it doesn't fall under D-1, Big D. Under your construct, there would be no way for that innocent person to get through the hole in the needle. I don't think so. And I think what we're disconnecting – Okay. Well, maybe it's – so why don't you explain, and then I'll just try to understand what the options would be for that individual. And I think where we part is, I think your question started with, let's assume there's an actual innocence exception that affords this kind of relief. Where does due diligence fit in? Now, in the example you gave, you have newly discovered DNA evidence which fully exculpates Person A, and Person B gets convicted. Well, Person A would certainly be motivated to file on time in terms of statutory tolling if this is the type of evidence that could have been discovered. But – I mean, it didn't get discovered. I guess maybe I didn't add what I said implicitly, is that it's 15 years down the road all this comes up, and you can't even file on time. And if he exercises due diligence and files in Federal court within a reasonable time of that discovery – But this is what I was saying before. I do not understand that to be true, because the facts that have now come out are not the facts underlying his claim, constitutional claim. They are facts that relate to actual innocence, but they are not facts that change, let us suppose, the constitutional claims that he's making. They're the rarest situations. As to this defendant or as to the hypothetical? The hypothetical. As to the hypothetical. In that case, one would assume to fit within the traditional concepts of exculpatory tolling. Once the DNA is discovered, he should file within a reasonable time, and he should not, for heaven's sake, sit on that claim for 5 years. But under your construct, he couldn't. No, I think that – So let me just understand, then, is that, however one might phrase it, under that, if there were some diligence standard imputed to actual innocence, then are you saying that you could see that that would fit within an equitable tolling aspect of it? Absolutely. And it's only if I pull out any kind of diligence standard that you then begin to kind of part ways? I think that's correct. I mean, I think it's my view of it. I don't know if it's a personal view or a systemic view, but it is slightly different than the panel decision. The panel took the position that Congress has spoken in this area, and we may not rewrite what Congress has spoken here at the end. And it distinguished Holland v. Florida because that was a traditional equitable tolling case. I think several cases have come up to the edge of recognizing an actual innocence exception, but either they have found no due diligence by the Petitioner or they have found no sufficient showing of actual innocence. And that's why often the – they have not gone on to explicate, if we were to recognize this type of exception, what would be the requirements. And what I'm saying is if this Court were to recognize one, my view is it should and must fall within the traditional structure of equitable tolling. Well, that's fine if we get to the point of deciding what it looks like if recognized. But do I understand correctly that you're not taking the position on behalf of the State of Oregon that there is such an exception? I don't. That there is such a, you know, subject to shaping. I think it's an open question. I think that's – Well, that's what I'm asking. If it were a closed question, I wouldn't bother with it, would I? What would be the point of having this in bank? I'm asking what is the position of the State of Oregon, which is a party before this Court, on the question of whether or not there is such an exception by law, whether  or not there is such a position. And I don't know what you require. This is a different question. But the panel took the position, Congress has written, it's not there, we looked at the word, it's not there, it doesn't exist. If that's a position you want to take, that's fine, but it sounded like your answer to Judge McKeown repudiated that point of view. So I'd just like to know what Oregon's view is in this case. I don't mean to be facile, but I think there are two points. Hard for me to do. The panel decision was a decision, I think, on statutory tolling. There is no actual innocence in the statutory tolling sense. The panel decision went on to say the Supreme Court has not yet recognized actual innocence as equitable tolling and went on to say it doesn't think it fits well because these are not circumstances beyond control. In terms of the State of Oregon, I'm inclined to agree with Judge McKeown that there should be some room for that in the extreme case. But if there were such an actual innocence exception recognized, it would have to be something that's shown under SHLIP standards, that in some cases there was an external impediment, newly discovered evidence, but once the newly discovered evidence is there, there has to be an exercise of due diligence. You didn't need a disclaimer. You did a very good job with not being answered by question, not being facile. So I just wanted to see if I could do it again. So due diligence that you're – there would be two different kinds of possible due diligence standards. One would be due diligence in discovering the evidence, and the other would be due diligence once you have the evidence. Which one are you suggesting? I think you'd have to have both in a claim like this Petitioner's, because you have asked me in your hypotheticals about a sort of a freestanding innocence. Well, suppose somebody comes up with DNA evidence after 15 years, and you could say, well, he could have found it in 10 years. That's one possibility. You could say, well, once he has it, he has to come forward. Well, it depends on the type of case. And again, I'm not trying to be difficult, but we're linked to this case, and this case is not a DNA case. And so it makes it difficult for me to say. House was a case in which you would have at least notice of the need to do serology tests, DNA when it was developed. DNA wasn't recognized in Orrin courts until 1995, of course, and the science has improved. But I think if you have, of course, tolling during that period of time where the case is in state post-conviction court. And that, I think, is where the first instance a person must exercise due diligence to present to state courts. If it's a type of evidence that simply did not exist, science didn't recognize, could not have been discovered, it's absolutely understandable why it would not have been presented to state post-conviction courts or the original state trial court. If we are passed and into an area where it is true new evidence that could not have been discovered in the exercise of due diligence, that's the type of thing that Congress has anticipated in the 2244d, one year after newly discovered evidence. It's not an exception. It's not tolling. It's simply the statute runs from the latest period of the discovery of new evidence. Kennedy, while we're talking about that, Ms. Klepsi, I'd be interested in the State's position on 2244d-1. As you know, the original merits panel decision is vacated when we take the case on bunk, but they did construe that section to, in effect, have three subparts rather than four. What's the State's position on that? Do you agree with the construction of 2244d-1 that the merits panel put on it, or do you believe they were mistaken and, in fact, that there are four subparts? Well, I'm not sure if this answers your question, but Congress created four different subparts, and that's not to say that the statute would have run from the latest of times, the latest of which the statute would have run from. And so I think the panel phrased it almost as an exception, and it's really simply the starting rule is 1 year, and after that you look for other types of things that could cause the statute to start running. And so I think the panel was not correct in its construction of the statute that it barred a schlup defense under AEDPA. As a statutory matter, I think it was correct as a statutory matter. So you think that this section, 2244d1, does bar a schlup defense? I do, as a statutory matter. I think the only way we'd get to actual assistance is as recognized as equitable tolerance. That's a pretty clear point. I'm just going to say, could you – your time is running out, and you started off your argument by saying there are other grounds on which the – this Court could have reversed the district court, one of which I gather is whether – even if you assume that there – we would recognize a schlup standard in this context, putting aside the question of diligence. Certainly. There was a very strong argument in your brief that the evidence here that was presented at the hearing before the district court didn't meet that standard. Well, it's a concern that I – I think this Court should share that 15 years after the crime, you have soft science, somebody coming in, never interviewing any of the principals, looking at the police reports and the transcripts and say, there might have been leading questions here. What do you do with the – what do you do with the expert's testimony? I don't think it's very strong. The bottom line of it is I don't think it shows much of anything. She fills all sorts of gaps with speculation. She may be a very fine psychologist and research scientist. Well, let's hand her a look at it to see if – took her opinion and laid it over the concept of reliability. How reliable was the victim's testimony? But I don't think it can say anything about the reliability of the victim's testimony, precisely because the expert report and testimony was what I would call extremely fallible, extremely weak. She made all these – all sorts of supplications. If it were a question of admissibility, which is no – if it were a question of admissibility, which is where district judges normally exercise the gatekeeping function for expert evidence, you don't disagree that this would have been sufficiently reliable under Darbert? Oh, no. I don't make any such contention. It would have been admissible. As a matter of fact, it should have been presented to the state post-eviction court for that matter, but wasn't. That's not the question. No, no. I understand. So it meets that standard, which is a normal standard where district judges apply. Yes. But you're saying it's not enough to prove actual innocence. It doesn't show anything, as far as I can tell. Your time is running out. I just have a quick question, and I want to let you take the time to rebuttal. This is a first petition, right? Yes. If it were an SOS, Schlapp would apply. Am I understanding it correctly? It would. Congress adopted the Sawyer standard, the clear and convincing and due diligence. And Schlapp, with the clear and convincing standard, would apply. So what happens if they now go and file a, you know, they give up on this one or rule against them or whatever, and then they file a second one? Like they're barred. Why would they be barred? Why wouldn't they be barred? I mean, again, I realize you don't think the showing is strong enough in this case. I'm talking as a theoretical matter. Why couldn't they come in with a second and apply the SOS standard, which would then bring Schlapp in? They'd have to make a clear and convincing showing, which you say it isn't done. But as a theoretical matter, why wouldn't that be possible? Well, I think that's one area that Congress has explicitly stepped into in requiring that due diligence could not have been discovered and presented to State court. And let's say they brought it up. It would be sort of a charade, wouldn't it? It would be sort of a charade. You bring a mock first petition, and then you bring a second petition. I suppose to some extent it depends on if this Court reaches the fully litigated actual innocence. If this Court found it was insufficient, it would make no sense to relitigate. Which might be a good reason to adopt the same standard for first petition that you would for an SOS. In the clear and convincing sense or the newly discovered sense? Perhaps we're not connecting on this one. Well, if you had a – if this were not a first petition, if this were a second petition, a second successor petition, you could bring – you could avoid the bar, the first petition bar, using – making a showing on the schlop of actual innocence. You'd have to show it by clear and convincing evidence. So if they can do that, why isn't there a good reason to apply the same thing on a first petition, not make him go through the charade of filing a petition, getting it dismissed, and then coming in on a second petition and making the same showing? Well, again, I hate to try to repeat myself, but it does not seem to fit with a construct of equitable tolling, that you don't have the due diligence, you don't have an external factor. The success of petition clear and convincing standard also engraphs the this is evidence that could not have been discovered. But wouldn't you – isn't one answer to this suggestion that you couldn't do that because you wouldn't – if you didn't raise it in the first petition, although you had it, then you wouldn't meet the second petition standard because you wouldn't have due diligence? That's correct, unless we're talking about, for instance, Judge McKeon's example of a newly discovered DNA evidence, in which case you could certainly bring a successive petition. If somebody else comes in and confesses, like Carragher, somebody else comes in. It wouldn't be a question of just going through the first petition in order, as charade as Judge Kaczynski says, because that wouldn't work. No. No. I mean, you could file on time and you'd have the same problem. Whether you filed on time or out of time, once you litigate your first petition, you would necessarily have to meet the standards for 2244B for successive petitions. So it's not really so much of a charade. You could litigate the first petition entirely on the merits and still have to meet that statutory standard. I'll reserve my 28 seconds for rebuttal, if I might. Scalia. May it please the Court. The miscarriage of justice gateway past procedural bars is the most basic equitable principle in habeas law. In Holland, the Supreme Court held that equitable principles, and of course, equitable in that case, are incorporated into the federal habeas corpus statutes absent an express statutory command to the contrary, unless a clear command says that that is not the case. The non-jurisdictional statute in this case includes no language nullifying the miscarriage of justice gateway. I don't need to take issue with your first statement, Mr. Saini. It sounds good, but it's really not true. The traditional habeas has been used for the – in cases of unlawful retention, and generally that has meant some sort of procedural miscarriage of the process. The question of whether or not if you're actually convicted fair and square with all due process, and it turns out you are innocent whether or not you're entitled to habeas is still an open question. I mean, Herrera suggested it might be. Schlupf suggested it might be. But, in fact, it is hardly a bedrock principle. It is actually something that we still don't know the answer to. I use it in the context of what Justice O'Connor was using when she was explaining that the cause and prejudice principle, equitable principle, did not provide a perfect safeguard against the incarceration of an innocent person as a fundamental injustice. But there are no perfect safeguards. It's not a perfect world. Things happen, and part of running a criminal justice system involves a necessary risk that once in a while we incarcerate and execute people who are innocent. That is true. This is, if you didn't have a standard that allowed for an occasional conviction, you would never be able to carry out any criminal punishment. So it's not clear to me that being innocent and in prison violates any constitutional right in and of itself, or certainly not particularly fundamental to habeas. I mean, most of what habeas is about is procedure, isn't it? And it's exactly that reason why it's so important, because in House and Schlup, the Supreme Court basically addressed exactly that question and said that where procedural interests such as finality, comedy, and court resources are at issue, that the interest in assuring that we do not have an innocent person sitting in prison, that we do not have an innocent person being executed, overcomes those procedural interests. And that's why it is such a basic and fundamental interest and a basic part of habeas corpus law, and the point of why that principle is at least parallel to equitable tolling, which has no innocent component, is to say that when Holland stated that equitable principles created this type of incorporation, absent a clear command to the contrary, that they were including and that the reasoning of that case. You know, this would be a tough case if this were really a case of a guy who, you know, I looked at and said, oh, he's really innocent. But Neil Klein is probably guilty. And there's really a very weak showing of actual innocence in this case. There's no witness that says he was somewhere else at the time of the crime. You know, there's no video of him, as it was, I think, in Herrera, where, you know, he's shown that he couldn't have committed the crime. What you have is opinion testimony saying, oh, well, we don't think that the children or child witnesses are liable. Well, tell me something new. No witnesses are liable, particularly not child witnesses. Your Honor, this is a massively strong case for actual innocence based on, forget expert testimony for a moment. Just look at the testimony that the jury never heard, that in March 10th, the mother gets the first report, has nothing to do with the client, is detailed, is then provided to the officer. The mother says, no other abuse reported. The officer says, no other abuse reported. Detailed statements. No use of anatomical dolls and nothing about Mr. Lee. It's not until months later, months later, that there's a first statement prompted by a leading question that he is involved. What exactly is it that the first jury didn't know? They didn't know the timing? Exactly. Is that true? Yes. And I think that one of the useful parts of the very detailed work that the district court judge did in this case is taking apart some of the erroneous assumptions of the lower courts, of the State court's rulings. For example, the State court was saying that there was no difference between the trial testimony and the hearsay testimony. But in fact, if you look at it carefully, they are completely different. And in fact, the State, in arguing before Judge Panner, conceded that they were – that it was – the hearsay was contradicted by the trial testimony to the same extent – What hearsay? I'm sorry. The hearsay statements that were allowed from Officer Fowler and the – Were contradicted by what? Were contradicted by the child's own statements at trial. Oh, by the child's own statements. Yes. Yes. So – and I think that that's very important in terms of what the court is – I mean, the kid contradicted himself on the stand. You know, he confused Robert with Richard. I mean, this was – the jury saw this. You really haven't brought in anything other than the things that might weigh on the credibility of the child witness. Your Honor, when you're looking at newly – Right? Am I right about that? No, not at all. I think that the judge made factual findings about not only that there was newly presented evidence, but that it was reliable and helpful evidence, and that those findings are entitled to deference by the jury. I'm very sorry. This is a sex abuse case. Yes. So this is not a situation where there were witnesses saying that I was in the room and I saw it not happen. It couldn't be, because this is stuff that's only happened between your client, allegedly, and the child. So this is not an external witness. The entire case rested on the credibility of the child witness. If the juror believed the child witness and disbelieved your client's story – I don't remember whether he testified or not – then they would convict, which they did. And if they disbelieved the child, then there would be no basis for conviction. It's an either-or. Is there anything you brought in that did anything other than try to weaken the effect of the child's testimony? First of all, I think that in the instruction that we have from – in house and – Let me answer my question. Did you hear it? Was there anything you brought in that did anything other than weaken the child's testimony? Yes. Let me give you – the officer testifies that it's a discouraged protocol to record what a child interviewed, which that's what the jury relied on in making its decision. We have the testimony from the doctor, the expert, saying in the publication – How does that go to the question of guilt or innocence? Well, if the officer is biased, if the officer is incompetent, if the officer has – is trying to – Get it out. If what? Then what? Then the evidence against him is less strong because you had – The officer wasn't there. It all hinges on the kid. So the officer, whatever the officer says, either supports the kid's testimony or undermines the kid's testimony. It all goes through the kid. Is there anything that you presented that does not weaken the child's testimony, that does anything other than that? The only thing inculpatory was either the child hearsay or the child's testimony. So anything that weakens that testimony in a flimsy case like this creates – Well, let me just step in. I think that goes to the standard, because the district court's talking about there wasn't a – they didn't – it was insufficient, the record, to establish with a sufficient degree of certainty, et cetera. And following on Judge Kaczynski, then, if you go back to other cases, it says actual innocence means factual innocence, not mere legal insufficiency. And yet at the conclusion of your response to Judge Kaczynski, you're really talking about insufficiency, not factual. I mean, that's really the nub of it. I'm talking about reliability. If the evidence that was before the jury is not reliable or is of a less degree of reliability, that creates a – from that type of showing of unreliability, for example, the actual chronology that the jury never really heard, the details of the earlier events, the effects of the suggestive practices that were engaged in. If you credit the child's testimony, where does that leave you? It leaves you having to decide whether the testimony is reliable. And as Dr. Bruck is real clear, she's not saying – this isn't a question about credibility. It's a question about reliability. It's not the child, whether the child is. But the jury makes that judgment. I mean, the jury is making both a credibility and reliability judgment. And they didn't have the tools to make the decision because of what? Could we say actual innocence without saying that the child was a liar that was mistaken? You can – yes. You can say that the evidence that was – How? You can say that the evidence that was newly presented, when you compare it to the old presented evidence, which was pretty marginal, I think it's safe to say, and that with the additional information, that that would – rendered it sufficiently unreliable that a reasonable juror would not find guilt beyond a reasonable doubt. What you're really playing on and what's complicated about the Schlepp standard is that, on the one hand, it says you're talking about actual innocence, but it then judges that by what a reasonable jury would do. So it's really not looking at reasonable innocence – innocence in some abstraction. It's looking at it in a legal sense. So the ultimate question is what would a jury do and not, in some skyway, was he innocent? That is right. It's a probabilistic determination, I think, is the phrase that's repeatedly used. This is what we call sufficiency. This is what Judge McKeown asked you. Isn't really your point that we have to re-weigh sufficiency? Not actual innocence, not the standard of actual innocence, but we have to say, well, now that we look at it, given everything that was there, we think that probably a jury would not have convicted. This is a… That's what you have, right? No. It's not a – sufficiency is Jackson v. Virginia. Schloop distinguished it, as did House. The inquiry is whether there is sufficient reliability questions raised by the newly presented evidence that a reasonable jury would have make that – would not be able to make that determination. And we have… You just said the same thing. I mean, you just talk about sufficiency. You think, you know, if it's not sufficient, that means that a reasonable jury can't make that determination. But that's quite different from saying we think there's a showing that has been made that the guy is actually innocent. We are – we are… That's a different animal altogether. In this case, the evidence about the client's statement, the client's statement in his post-conviction petition and the quotation for him in the trial was, did you  Hell no. This is not – this isn't somebody who is saying whether we're… We have to believe him and say the kid was lying or mistaken. That's where we have to wind up. That there are sufficient questions about the reliability of the child that – because the jury that heard it did not have that information, and if they did have that information, sufficient questions would be raised that they would not be able to find guilt beyond a reasonable doubt. Well, let's say we have that doubt, but we think he's a liar. We look at him and we say, you know, of course he's saying that. We don't have any trust at all in what he says. There is – this is… Don't we – don't we have to actually be able to find this – there is actual innocence? No. As the Court said in Bell… Really? …this is not a case of conclusive exoneration. That was his – that's what Justice Kennedy said in summing up. Some aspects of the State's evidence, voice, bizarre behavior, lies to law enforcement, blood on his pants, still support an inference of guilt. It's a question of reliability, not sufficiency. But there's also a question, again, of the way Schlupf stated the standard, which is in terms of what a reasonable jury would do with certain evidence and not in terms of exoneration in some non-courtroom-related setting. And it's a little hard to deal with because they seem to be talking two different things at different times. But ultimately, the standard does seem to be a courtroom-centered standard. And I think it's also a factual question. One of the things that House talks about is the deference to the trial court's determination. Here we've had a trial court who's worked this information, who's made… Remember, in House you had DNA. You had – you had more than just impeaching the testimony of witnesses. You had actual – you had actual demonstrative evidence. You had new witnesses that came in and said, oh, you know, we saw her on the bed. We saw – we saw him – evidence about things that happened elsewhere that provided an alibi. If I could suggest that perhaps some of those types of facts that you're reciting are facts that show how scrawny the case was in this situation where there was no medical evidence. There's nothing to test one way or another. Let me go back to the entry question first, i.e., how does the SHLUP apply here, and to the issue that was being discussed when your opponent was arguing, i.e., if you were to have a SHLUP-like standard, how would it operate here? And in particular, would you have any kind of a diligence standard, either a diligence in investigation or a diligence once you had the information? And then there are other questions, too, but let's start with that one. How would it operate? I think that diligence is not an issue in SHLUP. SHLUP is basically where cause and prejudice doesn't work, there isn't cause. Well, I understand, but here I would – since we're dealing with a timeliness standard, there might be some impulse to say we ought to have something, not – you shouldn't be able to come in 15 years later. I agree. And I think that one of the things that we look at is equity, and this is a great case for showing that kind of contrast. On one hand, we have a gentleman who's abandoned on appeal, files within a two-year state statute of limitations, finishes his state procedure, files within seven months, so he's well within the one-year statute of limitations, and is told you're out of luck. He's coming to you with pretty clean hands. You have somebody who – and I've never heard of this actually happening, but if there is a fear that people are out there holding on to evidence of their innocence so they can surprise the Court with it, if that's actually happening, then I think that there is a concept that approaches this, and that is what was replaced, the cause and prejudice replaced the previous Fay v. Noya deliberate bypass. Another equitable doctrine. And if there are – But would you – more to the point of Judge Berzon's question, would you impute some diligence requirement? Your argument just now is that if there were one, your client certainly met it, given. Yes. But do you think it's reasonable in the context of equitable tolling for the first petition, if one were to kind of adapt Schlupp, that there would be some diligence requirement with respect to bringing the claim once you have the evidence? No. I don't think that there should be a diligence requirement in those terms. I do think that if the State were able to show that, as under the previous regime, that if there was a deliberate bypass and an intentional abuse of the system, which, again, I just can't see why that would ever happen using the marketplace of why people would bring litigation. I have to say to you – But if your client waited 5 more years, then that would be okay, too, under your theory. Yes. 10 more years? Absent a showing – absent a show – I think that the – Basically, you're saying there would be no diligence requirement then. I don't think that there's not a threshold interest for diligence because this is superseding cause and prejudice. Cause is – I think incorporates that concept. But I – How can you say that, though, in the context that you seem to have shifted from the concept of actual innocence to basically where we are weighing the evidence, much like a Jackson situation? As a matter of fact, the language of House and the language of Jackson is very similar. If I understand what you said to the Chief Judge, you're saying there's no need to have truly exculpatory evidence. So you're really saying that you can bring new evidence that would perhaps lead to the point, as they say in House, that no reasonable juror would find him guilty beyond a reasonable doubt, which is Jackson all over again. So you're basically saying you can re-weigh the evidence in a Jackson standard, in effect, without showing due diligence or diligence of any kind 10 years, 15 years later down the road. Doesn't that really gut AEDPA and what AEDPA was trying to do? I don't believe so. First of all, I think that the evidence that we're discussing is evidence of actual innocence. No, and I understand your point. But it is, as you admitted to the Chief, you're just weighing the evidence back and forth. You've got some evidence here from NACAN or however you say it. It was really new. It's really important. It should have been entered, may have had an impact on the trial. But in effect, we're not saying, like the Chief said, this guy wasn't even there. No possibility could possibly have been there. There's no DNA. You're simply saying that in light of the new evidence, if you had put that before the jury, that they would have re-weighed the validity of the child's testimony and some of the other testimony and therefore would find him innocent. But it's a Jackson weighing, Jackson house weighing as opposed to the guy couldn't possibly have done it. Is that your standard, basically? The house without the Jackson, yes. The house standard is, and I think they took the language from Sloop about the probabilistic determination, and it is a probabilistic determination about what jurors are likely to do. But it's a re-weighing of the evidence, just like it would be done in Jackson, right? It's the court in house, district court there, they did a finding about what really happened. And the court said, we are not going to defer to that as we otherwise would because you weren't applying the probabilistic determination about what a reasonable jury would have done with this additional information. So that's what I think the function that the Supreme Court has directed on this type of inquiry, which is exactly what Judge Landau did. If we're going to adopt a standard where you don't have to have somebody that would just under any circumstances exculpate the person, i.e., actual innocence, then wouldn't there have to be some kind of a predicate of diligence? Otherwise, as Judge McEwen said, you could go 10 years, 15 years, 20 years down the jury would do with it. Isn't that correct? No. I don't as I said, I don't think there is any motivation that's conceivable for somebody who has. But you're talking about what people would really do as opposed to if they did it. And what I'm asking you is if somebody actually did that, they didn't have diligence, they may have had this information all along, but all they're asking us to do is to, if you put this new evidence in, you say, there's no way they could have believed this kid if this evidence had been in. Nobody could have believed the officer. But it's a weighing of the evidence as opposed to some new evidence that says this guy wasn't there. He was in Alaska. He was gone. They couldn't have possibly done it. I think if you're looking at somebody who's delayed for 5 years, has some exculpatory information, and they didn't bring it forward, you could say that they were deliberately bypassing a remedy, that there's an equitable reason why not to take their case. So you're saying there would be a predicate. I was. You're imputing a diligence standard then. I'm trying to take a nuanced position that an abuse of the writ is something that would foreclose going forward. You know, you're melding two old concepts. One is abuse of the writ, and the other one is deliberate bypass. Deliberate bypass is the Faye versus Anoya standard to get out from under a State procedural default. Abuse of the writ is a much broader concept that included in the old days some version of undue delay. I don't think you want Faye versus Anoya. I think it's abuse of the writ. And if he had the evidence in his hand, it was easily available to him, and he waited 10 years, I don't see why that couldn't be abuse of the writ. Your argument here is, but this isn't that case. Right. Abuse of the writ is out there somewhere as a possible guarantor. Yes. Against a sort of an abusively late file. And I just wanted to follow up on that. I keep going back to Schlupp. What was the Supreme Court there, in your view, in invoking equitable principles? Was it essentially drawing these principles from the constitutional guarantee of habeas corpus? I mean, they're not just floating around in the universe like rays. I see it as an essential component of the existence of the writ. So because its basic fundamental purpose is to guard against this type of miscarriage of justice. And I realize that not everybody is going to see it that way. But, for example, if there were — if statute were to be passed saying innocent people who file one day late can — should stay in prison for the rest of their lives or be executed, I think that would create suspension issues, Eighth Amendment issues, due process issues. Because traditional equitable principles would say that if you're really reasonably diligent, you're okay. But if you sit on your rights and wait forever, you're not. Yes. What peculiarity of going in this direction is — I assume that you agree that the second and successive standard, which is more stringent, isn't an overlay on Schlupp. I mean, meaning that you don't also have Schlupp in the second and successive. That is correct. And I wanted to point out that Chief Judge Kosinski, when he was mentioning the relationship between those two principles, the second and successive and the statute and Schlupp, I don't believe that they are the same. They are very different. Okay. Because the statute — Well, go ahead. The statute is dealing with the concept of constitutional claims, as you were pointing out. Right. That constitutional claim may be newly discovered and everything else. But it could be somebody who's guilty of sin. It could be somebody who's done it, but had a confession that was extorted from them, and finally the tape just popped up showing that the confession was involuntary or the officer, the prosecutor was holding on to evidence that would have been critical at trial, but doesn't have anything to do with factual innocence. But most of the time, I mean, the circumstance of this case, i.e., somebody who never filed a first petition, is presumably relatively rare. Most of the time, the actual innocence claims are going to come up on the second petition, no? I do not know. I think that it is something that will come up in both contexts, and it will be — Have we decided whether in an SOS situation, second or successive petition, that the Schlupp standard has been replaced? I don't think it has. I don't think we've decided that question. And I don't think it has. We left that question open in the en banc decision in Cooper. And I believe that the correct resolution of that has to do with, because actual innocence is different than a constitutional claim, that Schlupp survives and is still applicable. Can I just focus your attention on the difference between Schlupp and Herrera? Remember, Schlupp is a — Herrera is a freestanding innocence claim. Yes. Whereas Herrera is tied to a defaulted procedural defect. We're assuming that in a Herrera claim that the trial was constitutionally pristine. In Schlupp, we're saying that we cannot — That's what we call a freestanding innocence claim. Yes. Whereas Schlupp requires a predicate, a viable but defaulted procedural claim. A constitutional claim, yes. A constitutional procedural claim, a non-innocence procedural claim, right? That is correct. And what is your — your predicate claim here? The — there are numerous predicate claims, mostly constellated around the trial ineffective assistance of counsel, appellative ineffective assistance of counsel, use of hearsay in violation of the Confrontation Clause. You know, I've been — Don't you have to make a showing as to those in order to start — to trigger Schlupp? That's — I believe we made a very strong showing of that to the court, the district court, on both matters. We had the Schlupp hearing. We were ready to go straight to the merits, because we'd already briefed the merits. The court set it over, had another hearing for the merits. We briefed and argued about the merits, and the judge very cleanly divided. Here's the reason why it passes actual innocence, so that I can get to the — makes all the findings that he needs to and findings that warrant deference, and then he gets to the merits. And I — this was a constitutional train wreck. It was a disaster. And I think that it's not too much to ask that somebody is going to be saddled with this type of crime that — Judge Panner said, this is a vicious, awful crime. Whoever did it ought to go to jail forever. But there's sufficient doubts that are raised by the newly presented evidence to me that I've assessed it with — wrote a 49-page opinion to come to the conclusion that it's not sufficiently reliable. Do we have to adjudicate that predicate claim before we get to the Schlupp matter? Do you have — do we have to decide that it's a viable — a viable constitutional claim before we even get to the question of actual innocence? Do we have to do that? I think the Court would have leeway in how it wants to approach that matter. And I think that different courts have approached it. It pretty much has to. Otherwise, you have a freestanding Herrera claim, which is a high standard. See, in order to take advantage of the Schlupp standard, you have to show you have a viable constitutional claim, which would have to — would have to be adjudicated. So we'd have to agree with the district court on the underlying claim before we even got to the question of Schlupp, wouldn't we? So as long as our Federal petition has a Federal claim in it that is not Herrera or actual innocence, I think we would pass that. We would be properly addressing Schlupp as we did. And, in fact, the — One thing the district court did that was very strange, though, was when he got to the merits, he seemed to have lost complete track of it, and he did nothing IDPA-related at that point. And, in fact, he said, first of all, that you don't — that the hearing on the merits now becomes the hearing — the hearing on the actual innocence becomes the evidentiary hearing on the merits, and he never did any kind of State court deference at that juncture. I think that I — my reading of the district court opinion is that the Court said that with this additional information, that this is why I can proceed, and that these — they also do not match under an IDPA standard, that it was also ineffective assistance of counsel. He — I think he made both findings. But the reason — remember that this is a case where there — the basic facts underlying the State court ruling were either not supplemented with this additional information or were later contradicted. There are specific findings that — and, as I said, the State agreed that certain predicate findings were simply incorrect, and, for example, one of the — the State was asserting that there wasn't a — wasn't new — all the information was before the jury. Obviously, it wasn't. That — Your time is running. In fact, we're over, and I've been trying to ask this question for the last five minutes. I'm sorry. Well, it's not your fault. There were four counts on which he was committed. Yes. Two of them were sexual abuse and two of them were sodomy. Yes. Now, your argument, I think, is the strongest as against the sodomy. I don't think your argument is particularly strong against sexual abuse because the child testifies to that. It's the sodomy as to which the child does not testify. The father testifies that he's heard from the child that there was sodomy, that is to say, unconsented oral — excuse me, anal intercourse that hurt. That's hearsay from the father, but I think that's admissible under Oregon law. Is that right? No. Our position is that the — that the statute that they invoke is superseded by the Constitution under Wright v. Idaho, and — which was a Supreme Court case that preceded the trial, and that there should have been an objection on that basis that would have kept that information from the jury appropriately. So we're not allowed to consider that evidence in terms of what a reasonable jury would do? Well, we've got to make our own mind up on what the evidence really should have been. I was trying to answer your question about how I would respond on the Oregon law question. As far as the Schlupf house examination, as the judge considered it, it's part of the whole thing. We look at everything. And that's what the judge did here, and that's what the judge did appropriately. Okay. Okay. Thank you. Thank you. It might click off a couple quick answers. It is admissible under Oregon law. It's no different than a prior consistent statement under Federal Rules of Evidence. There's also an Oregon rule that allows for prior statements of child victim. And it's certainly considered proper in the Schlupf context. Judge Berzon, you're absolutely right. Judge Panner didn't give any deference whatsoever to the State court. And even if we were to get all these other hurdles passed, there's just no analysis by Judge Panner of what was wrong with the State post-conviction court's hearing determination. I think that's all the time I have. Okay. Thank you. This is how you will stand submitted for adjournment.
judges: Kozinski, Schroeder, Pregerson, Thomas,mckeown, W Fletcher, Paez, Berzon, Rawlinson,clifton, M Smith. Cjj